**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **JANICE A. DAVIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:12-cv-1181 |
| ) | |
| **WELLS FARGO, NA,** ) | Judge Trauger |
| **CHANCERY COURT FOR DAVIDSON COUNTY,** ) | |
| **CHANCELLOR CAROL McCOY,** ) | |
| **WILSON & ASSOC. LAW FIRM,** ) | |
| **AND ATTORNEY BARNEY,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

Plaintiff Janice A. Davis has filed suit against defendants Wells Fargo, N.A.; the Chancery Court for Davidson County, Tennessee; Wilson & Associates law firm; and Attorney [f/n/u] Barney.[1] In documents attached to the complaint, the plaintiff suggests she also intended to name Chancellor Carol McCoy as a defendant. Because the plaintiff brings suit *in forma pauperis*, her complaint is before the court for an initial review pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the dismissal of a complaint, prior to service on the defendant, if the action "is frivolous or malicious[,] fails to state a claim on which relief may be granted[,] or seeks monetary relief against a defendant who is immune from such relief." *See also McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997) ("The complaint must be dismissed if it falls within the requirements of § 1915(e)(2) when filed."), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

**I.  Factual Allegations**

The plaintiff alleges that defendant Wells Fargo, N.A. "admitted to taking the $145,000 proceeds from a Class action lawsuit with WMC Mtg v. Disadvantaged Minorities Women Black & Hispanic in 2007. Those funds were to go to that class of which [the plaintiff] was legally a part, but Wells Fargo NA took the money." (ECF No. 1, at 1.) More specifically, the plaintiff alleges that, in 2006, she purchased a house located at 1005 9th Avenue South, Nashville, Tennessee 37203. The mortgage company was WMC

---

[1] Based on documents attached to the complaint, it appears that Mr. Barney's first name is John.

Mortgage. This company was sued in a class action lawsuit for defrauding first-time homebuyers, in particular minority black and Hispanic women and families. The case was litigated in federal district court in California, and the plaintiff alleges that she was ultimately awarded $145,000 in the settlement of that action, which would have been enough to pay off her mortgage on the house.

The plaintiff claims she did not receive timely notice of the settlement or the money she was supposed to have received, because Wells Fargo, through its attorney Mr. Barney, wrongfully intercepted that payment and then "distracted" the plaintiff by immediately initiating foreclosure proceedings to take the plaintiff's house at 1005 9th Avenue South.

The plaintiff seeks relief against the Chancery Court for Davidson County, Tennessee, apparently on the basis of a decision entered by Chancellor Carol McCoy after a final hearing on October 25, 2012, which, the plaintiff claims, "refused to address the matter pertaining to the fact that Wells Fargo had illegally obtained the $145,000 check that would have allowed Plaintiff to pay off the mortgage." (ECF No. 1, at 6.) In that regard, the plaintiff indicates that she had been involved in litigation in the state courts over the foreclosure of her mortgage loan for a number of years. She apparently instituted proceedings herself in the Chancery Court for Davidson County, Tennessee for the purpose of enjoining the foreclosure. Attached to her complaint in the present case, among other exhibits, is a copy of an order of the Chancery Court for Davidson County, Tennessee granting summary judgment to defendant Wells Fargo Bank, N.A. in a case before that court styled *Janice Davis v. Wells Fargo Corporation, Saxon Mortgage, WMC Mortgage Corporation*, No. 11-1354-II. In the order granting summary judgment, the court held that (1) Wells Fargo gave proper notice to the plaintiff that she had defaulted on her mortgage loan and notice of her right to cure the default pursuant to the terms of the Deed of Trust; (2) the foreclosure sale was conducted properly; and (3) the plaintiff had no private right of action for a loan modification. (ECF No. 1, at 106.) Judgment was entered in favor of Wells Fargo, granting it possession of the real property located at 1005 9th Avenue South.

In the present case, the plaintiff states that she intends to bring a claim for "fraudulent acquisition of fund designated to be paid to [her]," and "violation of [her] civil and human rights . . . and a minority suffering historical and inhumane discrimination." (ECF No. 1, at 16.) She seeks relief in the form of, among other things, an injunction requiring that Wells Fargo return the $145,000 it stole from the plaintiff

and directing Wells Fargo to permit the plaintiff to pay the mortgage amount owed in 2007 from the settlement proceeds; ordering that the plaintiff be given clear title to the house that was the subject of foreclosure proceedings, once the funds are returned to her and used to pay off the mortgage (ECF No. 1, at 12); barring any continued "illegal actions" by Wells Fargo Bank or by Wilson & Associates Law Firm; staying "all foreclosures initiated by Wells Fargo Bank as they were not qualified as a member of the class in the WMC class action suit'"; permitting rescission of the plaintiff's bankruptcy; and ensuring that plaintiff's credit rating is restored. The plaintiff also seeks compensatory and punitive damages and attorney fees.

## II. Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss a civil complaint filed *in forma pauperis*, or any portion thereof, that fails to state a claim upon which relief can be granted or is frivolous, or if it seeks relief from a defendant who is immune from suit. The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [that statute] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**III.    Analysis and Discussion**

   **A.    The *Rooker-Feldman* Doctrine**

This court has an independent obligation to determine whether it has subject-matter jurisdiction over the action before it. *Kusens v. Pascal Co.*, 448 F.3d 349, 359 (6th Cir. 2006). To the extent Janice Davis seeks this court's intervention for the purpose of setting aside a state-court order to which she objects regarding the disposition of the real property located at 1005 9th Avenue South in Nashville, this court lacks jurisdiction under the *Rooker-Feldman* doctrine to provide the requested relief. This doctrine is based on two United States Supreme Court decisions, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

The *Rooker-Feldman* doctrine provides that district courts lack subject-matter jurisdiction of "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). As this language suggests, the doctrine is confined to cases brought after state proceedings have ended. *Exxon Mobil*, 544 U.S. at 291–92. It appears that the state-court proceedings to which the plaintiff objects in this case have ended, and the plaintiff seeks review and reversal of a state court order to which she objects. It is unclear whether the plaintiff appealed the state-court decision or otherwise made an effort to vindicate her rights within the state-court system.

In *Lawrence v. Welch*, the Sixth Circuit applied a "source of injury" test to determine whether the *Rooker-Feldman* doctrine applies:

> If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

531 F.3d 364, 368 (6th Cir. 2008) (quoting *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006)). The Sixth Circuit stressed in *McCormick* that the *Rooker-Feldman* doctrine is not a "panacea" to be applied whenever state court decisions and federal court decisions may overlap:

> The Supreme Court made clear in *Exxon Mobil* that the doctrine is confined to those cases exemplified by *Rooker* and *Feldman* themselves: when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law. In such a situation, a plaintiff seeks appellate review of the state court judgment, and the federal district court has no subject matter jurisdiction over such an action.

*McCormick*, 451 F.3d at 395; *see also Givens v. Homecomings Fin.*, 278 F. App'x 607, 609 (6th Cir. 2008) (noting that the Sixth Circuit has tightened the scope of the *Rooker-Feldman* doctrine in the wake of *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), and now construes it to deprive a district court of jurisdiction only "when the cause of the plaintiff's complaint is the state judgment itself" (citing *McCormick*, 451 F.3d at 393)). *Cf. Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 921 (N.D. Ohio 2009) (concluding that the *Rooker-Feldman* doctrine did not prevent the district court from exercising subject-matter jurisdiction simply because a party attempted to litigate in federal court a matter previously litigated in state court as long as the federal plaintiff presents an independent claim over which the district court has jurisdiction, "even if that claim denies a legal conclusion reached by the state court." (citing *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 287 (6th Cir. 2007)).

In the present case, the plaintiff seeks to sue the Chancery Court for Davidson County, apparently because the plaintiff disagreed with that court's decision. Because the source of any injury inflicted by the state court is the judgment issued by that court, it is apparent that the claim against the Chancery Court is barred by the *Rooker-Feldman* doctrine. The appropriate course of action, if the plaintiff disagreed with the state court's decision, would have been to take an appeal of that decision to the Tennessee Court of Appeals. This court does not have appellate jurisdiction over state-court decisions. Even if that were not the case, any suit for damages or injunctive relief against the Davidson County Chancery Court, a division of the State of Tennessee, is barred by the Eleventh Amendment. The claims against the Chancery Court are therefore subject to dismissal for failure to state a claim for which relief may be granted.

Likewise, to the extent the plaintiff intended to sue Chancellor Carol McCoy, that claim too is subject to dismissal for two reasons. First, insofar as the cause of the plaintiff's complaint against Chancellor McCoy is the judgment entered by the Chancellor against the plaintiff, the suit is barred by the *Rooker-Feldman* doctrine. *McCormick*, 451 F.3d at 393. Second, judges are entitled to absolute judicial immunity from suit for damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction. *Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam); *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). The plaintiff's claims against Judge McCoy are premised upon actions taken in her judicial capacity. The claim against Chancellor McCoy is barred on the

basis of immunity as well.

The relief sought in the present action against Wells Fargo Bank, one of the defendants in the state-court action, is similarly foreclosed insofar as the plaintiff seeks to circumvent the Chancery Court's judgment approving the foreclosure on the plaintiff's house. This court does not have jurisdiction to enjoin the state-court action or to set aside the judgment granting possession of the house located at 1005 9th Avenue South, Nashville, Tennessee to Wells Fargo. The claims against Wells Fargo seeking relief in the form of an order setting aside the state-court judgment and awarding possession of the house to the plaintiff must therefore be dismissed.

Alternatively, to the extent the complaint may be construed as seeking injunctive relief against on-going state-court proceedings, this Court is precluded by the *Younger* abstention doctrine from providing relief. This doctrine, derived from the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), provides that, when state proceedings are pending, principles of federalism dictate that constitutional claims should be raised and decided in state court without interference by the federal courts. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987); *Tindall v. Wayne Cnty. Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001). *Younger* abstention applies when "(1) there [are] on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990) (citation omitted). State foreclosure proceedings clearly implicate important state interests. *Doscher v. Menifee Circuit Court*, 75 F. App'x 996, 997 (6th Cir. 2003); *see also Borkowski v. Fremont Inv. and Loan of Anaheim, Cal.*, 368 F. Supp. 2d 822, 828 (N.D. Ohio 2005) (finding abstention warranted on the basis that a pending state foreclosure matter was of paramount state interest). Further, the plaintiff has not articulated any reason why she cannot raise her constitutional concerns in the state proceedings. *See Pennzoil Co.*, 481 U.S. at 14 ("[T]he burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'" (quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979))).

In short, it appears that all of the plaintiff's claims against the Chancery Court and Chancellor McCoy are completely barred, and that her claims against Wells Fargo Bank are barred by the *Rooker-Feldman* doctrine to the extent the cause of the plaintiff's complaint is the state-court judgment upholding

the foreclosure proceedings against the plaintiff. Those claims will be dismissed without prejudice for lack of jurisdiction.

### B. Subject-Matter Jurisdiction over Remaining Claims and Defendants

As suggested above, the federal courts have limited jurisdiction and can hear only those cases authorized by the United States Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally speaking, to establish subject-matter jurisdiction, a plaintiff's complaint must show either the existence of a federal question, pursuant to 28 U.S.C. § 1331, or diversity of the parties involved in the lawsuit, pursuant to 28 U.S.C. § 1332. Lack of subject-matter jurisdiction cannot be waived and thus can be raised by the court, *sua sponte*, at any time during the proceedings. *Ambrose v. Welch*, 729 F.2d 1084, 1085 (6th Cir. 1984); Fed. R. Civ. P. 12(h)(3).

Under § 1331, district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For a civil action to arise under the Constitution or federal law, "a well-pleaded complaint [must] establish [] either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Palkow v. CSX Transp. Inc.*, 431 F.3d 543, 552 (6th Cir. 2005). 28 U.S.C. § 1332 provides for federal subject-matter jurisdiction in all civil actions where the parties are diverse and the amount in controversy exceeds $75,000. Parties are considered diverse when the lawsuit is between citizens of different States; citizens of a State and citizens or subjects of a foreign state; citizens of different States and citizens or subjects of a foreign state are additional parties; and a foreign state, as plaintiff, and citizens of a State or different states, as defendants. *Id.* In addition, however, the district courts have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

In the instant case, the plaintiff expressly states that she intends to bring a claim for "fraudulent acquisition," which appears to sound in state tort law, against the defendants Wells Fargo, Wilson & Associates law firm, and Attorney Barney. The plaintiff also suggests, however, that she seeks to bring claims against Wells Fargo for discrimination in the making or modification of a contract under 42 U.S.C. § 1981, and for discrimination in public accommodation under 42 U.S.C. § 1982. Section 1981 prohibits

intentional race discrimination in the making and enforcing of contracts with both public and private actors. 42 U.S.C. § 1981. The statute's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1982 reads: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. "To effectuate the remedial purposes of the statute, the Court has broadly construed this language to protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and use property on an equal basis with white citizens." *City of Memphis v. Greene*, 451 U.S. 100, 120 (1981). Both § 1981 and § 1982 "derive their operative language from the first section of the Civil Rights Act of 1866." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) (citing *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 439–40 (1973)). Thus, due to "their common origin and purpose, § 1981 and § 1982 are generally construed in tandem." *Id.*

The plaintiff indicates that she is a minority and alleges that Wells Fargo interfered with her ability to modify a contract and her ability to keep her house at 1005 9th Avenue South. Construing the complaint very broadly, the court finds, for purposes of the initial review, that the plaintiff states colorable claims against Wells Fargo under 42 U.S.C. §§ 1981 and 1982. Further development of this case may well reveal that these claims are barred by *res judicata* or other preclusion grounds, but at this point, the plaintiff appears to have stated claims against Wells Fargo over which this court has independent subject- matter jurisdiction. In addition, the court has supplemental jurisdiction over the state-law claim for theft under 28 U.S.C. § 1367. While the theft claim appears to be closely related to the foreclosure proceedings, the plaintiff asserts that the Chancery Court did not address this claim. If this assertion is true, then this claim was not the subject of the state court's judgment and would not necessarily be barred by *Rooker-Feldman*. While it too may be barred by *res judicata*, the claim, for now, will be permitted to proceed. The court expresses no opinion as to the ultimate merit of these claims.

## IV. CONCLUSION

Based on the *Rooker-Feldman* doctrine as well as considerations of immunity, the court will dismiss the claims against the Chancery Court for Davidson County and Chancellor Carol McCoy.

Further, insofar as the complaint seeks to enjoin enforcement of one or more orders entered by the Chancery Court for Davidson County, Tennessee or otherwise to appeal a judgment of that court, this court lacks jurisdiction to entertain such claims. It is not clear at this juncture whether all the plaintiff's claims may be barred by the *Rooker-Feldman* doctrine or, alternatively, whether *Younger* abstention or *res judicata* should apply. For now, however, the court must construe the complaint in the light most favorable to the plaintiff and give her the benefit of the doubt. Accordingly, at this juncture the plaintiff's claims against Wells Fargo under 42 U.S.C. §§ 1981 and 1982 will be permitted to proceed, along with the supplemental state-law claim for conversion against Wells Fargo, John Barney, and Wilson & Associates law firm.

An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge